**TAB EXPRESS INTERNATIONAL, INC., Plaintiff,**

v.

**AVIATION SIMULATION TECHNOLOGY, INC., Defendant.**

No. CIV.A. 02–2589–CM.

United States District Court, D. Kansas.

May 9, 2003.

Jan P. Helder, Jr., Stueve, Helder, Siegel LLP, Kansas City, MO, for plaintiff.

David S. Ladwig, Brian R. McGinley, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter comes before the court on plaintiff's Motion to Sever Counterclaims and to Transfer (Doc. 7). Plaintiff filed its complaint in this court on November 25, 2002, alleging breach of contract, breach of the duty of good faith and fair dealing, breach of express warranty, fraudulent inducement, negligent misrepresentation, unjust enrichment, and rescission, all of which arise from a sales contract between plaintiff and defendant. On January 8, 2003, defendant filed its Answer and Counterclaims (Doc. 4). In addition to setting forth 16 affirmative defenses, defendant's pleading contained allegations supporting permissive counterclaims against plaintiff for direct patent infringement and active inducement of patent infringement. On February 14, 2003, plaintiff filed its Answer and Affirmative Defenses to Defendant's Counterclaims (Doc. 6). The same day, plaintiff filed its Motion to Sever Counterclaims and to Transfer (Doc. 7), wherein it requested that the court sever defendant's patent infringement claims and transfer the severed claims to the United States District Court for the Middle District of Florida. Defendant opposes this motion. For the reasons set forth below, the court severs defendant's counterclaims and transfers them to the United States District Court for the Middle District of Florida.

### I. *Background*

Plaintiff operates a flight training school in DeLand, Florida, where it trains pilots for commercial airlines. Defendant manufactures and distributes flight training devices. Plaintiff's claims arise out of plaintiff's purchase of a flight simulator for a Beech 1900D King Air airplane (the Flight Simulator) from defendant. Plaintiff alleges that, from the delivery date, the Flight Simulator never operated correctly. Plaintiff also alleges that defendant agreed to correct the Flight Simulator's operational deficiencies, but that defendant later refused to do so. Plaintiff also

alleges that defendant denied coverage of the Flight Simulator under the previously negotiated warranty.

In response to plaintiff's claims, and in addition to its affirmative defenses, defendant filed counterclaims against plaintiff seeking injunctive relief for plaintiff's alleged infringement of a patent held by defendant. Defendant alleges that plaintiff uses, at its training facility, flight simulator products that infringe on one of defendant's patents, including the Elite iGate (the "Allegedly Infringing Device"). Defendant alleges that plaintiff infringes on its patent by using the Allegedly Infringing Device and by inducing third-parties to do so.

The parties agree that defendant's patent infringement claims have no factual or legal connection to plaintiff's claims. Defendant argues that it is entitled to have all of its claims against plaintiff adjudicated in one proceeding and urges the court to maintain a single action disposing of all claims. Plaintiff moves the court to sever the unrelated claims and transfer them to the United States District Court for the Middle District of Florida. Included in plaintiff's arguments in support of severance and transfer is its contention that Elite Simulation Solutions ("Elite"), the manufacturer of the Allegedly Infringing Device, is the proper defendant to this action, and that plaintiff's own liability, if any, was caused by Elite.

Both plaintiff and Elite have their principal places of business in Florida. Plaintiff maintains that Elite must be joined as a defendant to this action in order for plaintiff to adequately defend the infringement claims. Plaintiff further asserts that the court has no reasonable basis for asserting personal jurisdiction over Elite in Kansas, nor would Elite employees be subject to compulsory process in Kansas.

## II. *Analysis*

### A. *Motion to Sever Counterclaims*

Rule 21 of the Federal Rules of Civil Procedure allows district courts discretion to sever any claim against a party and proceed with the claim or claims separately. Rule 21 applies when the claims asserted do not arise out of the same transaction or occurrence or do not present some common question of law or fact. *See Am. Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 190 (D.Vi.1975). Under Rule 21, the court can also sever unrelated claims and afford them separate treatment when to do so would be in the interest of some of the parties. *Id.* This broad power stems from the last sentence of Rule 21, which clearly authorizes the court to sever the claims and proceed with them separately.[1]

Courts may order a Rule 21 severance when it will serve the ends of justice and further the prompt and efficient disposition of litigation. "When determining whether severance is appropriate under Rule 21, the court considers the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic." *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.,* 918 F.Supp. 343, 350 (D.Kan.1996) (citing *Sutton Hill Assocs. v. Landes,* No. 87 Civ. 8452, 1988 WL 56710, at *2 (S.D.N.Y. May 25, 1988) and *Spencer, White & Prentis Inc. v. Pfizer Inc.,* 498 F.2d 358, 362 (2d Cir.1974)).

The court first concludes that severance will not unduly inconvenience either party. Indeed, the defendant's discovery proposal already separates its claims from plaintiff's. In the Report of Parties' Planning Meeting (Exhibit A to Tab Express International, Inc.'s Reply in Support of its Motion to Sever Counterclaims and Transfer) (hereinafter referred to as "Report"), defendant proposes that all discovery regarding "construction of" its patent claims should be completed by June 2, 2003, in anticipation of a *Markman* hearing to determine the scope of the infringement claims. All other fact discovery would be completed by February 2, 2004. (Report at 9.) If the court were to adopt defendant's proposal, it would be required to make significant determinations regarding defendant's infringement claims before the parties even began addressing plaintiff's claims. Moreover, defendant lists 14 poten-

---

**1.** "Any claim against a party may be severed and proceeded with separately." Fed.R.Civ.P. 21.

tial areas for discovery. The only topic that applies both to plaintiff's and to defendant's claims is the issue of damages. Since no substantive issues of liability in these cases overlap, neither party will be required to present the same evidence or the same case twice. The court finds that neither party will be substantially inconvenienced by the severance.

The court also concludes that the potential prejudice to plaintiff of defending defendant's infringement claims in this forum far outweigh the prejudice to defendant in severing and transferring its claims to a more convenient forum. Defendant proposes to delay the discovery process and adjudication of plaintiff's claims by eight months (that is, after defendant's counterclaims are evaluated by the court). Based on the facts set forth by both parties, the court concludes that an adjudication of all of plaintiff's and defendant's claims in one action would result in significant delay of and prejudice to plaintiff's case, and would further substantially inconvenience this court.

■ As set forth in more detail below, defendant also proposes to pursue its claims in a forum where it is doubtful plaintiff will have access to the necessary witnesses, proof, and compulsory process to adequately defend itself. Severance is particularly appropriate where, as here, the court determines that venue should be transferred as to some claims or parties. If a court determines that venue is improper or inconvenient as to some claims or parties, the court may sever those claims and transfer the severed claims to another district for the convenience of the parties and witnesses or in the interest of justice. *Rappoport v. Steven Spielberg, Inc.,* 16 F.Supp.2d 481, (D.N.J.1998). "Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1689 (3d ed.2003) (citing *Fed. Deposit Ins. Corp. v. McGlamery,* 74 F.3d 218 (10th Cir.1996)). The court concludes that, in balancing the potential prejudice to defendant in severing its claims against the potential prejudice to plaintiff if the claims are not severed, the outcome clearly weighs in favor of severance.

■ The complexity of the claims at issue lend further support to the decision to sever. Defendant's counterclaims involve complex patent infringement issues arising from plaintiff's purchase and use of the Allegedly Infringing Device. Defendant does not deny that the patent infringement claims are complex and, in fact, states that a longer (ten month) discovery period "is necessary due to the fact that patent infringement claims are at issue in this case." (Report at 9.) Instead of denying the complexity of its claims, defendant suggests that plaintiff's claims are equally complex; defendant argues that plaintiff's action, which includes seven separate counts, will require significant discovery and "are not disproportionately less complicated than [defendant's] counterclaim allegation of patent infringement." (Def. Mem. at 6.)

The court declines the opportunity to rule on whether contract or patent infringement claims are more complex. However, defendant's statement that plaintiff's claims are complex begs the question: if plaintiff and defendant's claims are each complex and unwieldy on their own, how can economy and expedition be served by combining them into one unmanageable proceeding? The court concludes that economy and expedition will be best achieved through severance of these complex claims into independent cases.

The final factor in determining whether severance is appropriate is the severability of law and logic. While the court will not sever claims where the issues are "inextricably intertwined with the remainder of the action," *Old Colony,* 918 F.Supp. at 350, when counterclaims are based on an entirely different factual situation from that underlying the plaintiff's claim, they are readily severable. *T.S.I. 27, Inc. v. Berman Enter. Inc.,* 115 F.R.D. 252, 254 (S.D.N.Y.1987) (citations omitted). After reviewing the pleadings and the arguments of both parties on this issue, the court concludes that plaintiff's claims do not involve a single question of law or fact that is also at issue in defendant's counterclaims. Plaintiff's claims involve issues of breach of contract, breach of warranty,

breach of the duty of good faith, fraudulent inducement, negligent misrepresentation, unjust enrichment, and rescission. All of these claims arise from plaintiff's purchase of the Flight Simulator from defendant. Defendant's claims involve issues of patent infringement arising from plaintiff's purchase and use of the Allegedly Infringing Device.

The claims involve different models of flight simulators. In fact, the Allegedly Infringing Device was manufactured by a nonparty to this action, Elite, who then sold it to plaintiff. The circumstances surrounding plaintiff's purchase of the Flight Simulator from defendant are completely separate from the circumstances surrounding plaintiff's purchase and use of the Allegedly Infringing Device from Elite. As defendant clearly illustrated in its proposed discovery topics, there are no common issues of law or fact involved in both plaintiff's and defendant's claims. The court therefore concludes that this case meets all of the factors set forth in *Old Colony.* Severance of defendant's counterclaims from plaintiff's claims is clearly appropriate.

### B. *Motion to Transfer Counterclaims*

Plaintiff also moves this court to transfer defendant's counterclaims to the United States District Court for the Middle District of Florida. 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In a motion to transfer, the movant bears the burden of establishing that the existing forum is inconvenient. "Unless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Amwest Sur. Ins. Co. v. Guarantee Elec. Constr. Co.,* No. Civ. A. 00–2196–JWL, 2000 WL 1310512, at *3, (D.Kan. Aug.21, 2000) (citations omitted).

■ In determining whether transfer is appropriate, the court must consider:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of wit-

nesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991)).

■ Several of these factors do not apply to this case. The infringement claims involve issues of federal law, so neither conflict of laws nor the value of local courts applying local laws are at issue. Additionally, the parties have not raised issues regarding the enforceability of judgments, congested dockets, or the availability of a fair trial in either venue. The remaining issues the court must balance are the plaintiff's choice of forum, the accessibility of witnesses and proof, the cost of making the necessary proof, and the practical considerations leading to ease and expedition of the trial.

In support of its choice of forum, defendant argues that plaintiff asserted the propriety of venue in this forum in its original complaint. Defendant also states that "[i]t cannot be inequitable to require [plaintiff] to defend against [defendant's] claims in the forum where [plaintiff] has chosen to sue [defendant]." (Def. Mem. at 10.)

The court finds defendant's argument disingenuous. In its complaint, plaintiff asserted the propriety of venue for the claims arising out of the purchase of the Flight Simulator. Although defendant represents that plaintiff chose to sue in this forum, the forum selection clause in the sales contract required plaintiff to file suit in Kansas, and, thus, limited plaintiff's ability to choose a different forum.

The record is not explicit regarding whether this court would have personal jurisdiction over plaintiff in the absence of plaintiff's original complaint or whether venue is prop-

er for the infringement claims. It is therefore unclear whether defendant's infringement claims could have been brought in this court except as a counterclaim. Plaintiff denies it is subject to venue and personal jurisdiction in Kansas. Although plaintiff does not ask this court to dismiss or transfer based on a lack of jurisdiction, it does request a transfer of venue. Since defendant's counterclaims are permissive, rather than compulsory, the court does not have ancillary jurisdiction over the counterclaims. *Hansen v. Shearson/Am. Express, Inc.*, 116 F.R.D. 246, 251 (E.D.Pa.1987). Plaintiff's challenge of venue is therefore appropriate, as a party may "properly object to being called upon to defend a claim related to a permissive counterclaim on grounds of venue." *Id.*

"In any determination of a motion to transfer under § 1404(a), the plaintiff's choice of a *proper* forum is entitled to great weight, and will not be lightly disturbed." *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923, 927 (W.D.Mo.1985) (citations omitted, emphasis added). In light of the forum selection clause that allowed defendant to bring its claims in this court, as well as the court's doubts as to whether venue is even *proper* as to the infringement claims, much less *convenient*, the court concludes that defendant's choice to bring its infringement claims in this forum, though an important factor, is not dispositive.

The next consideration is the availability of witnesses and other proof, including the availability of compulsory process to ensure the appearance of witnesses. Plaintiff's second affirmative defense to defendant's infringement claims is that Elite, a non-party to this action, caused any damages to defendant resulting from infringement of defendant's patent. Plaintiff also argues that Elite, and not plaintiff, is the proper party in interest.

Plaintiff asserts that it must join Elite as a.party in order to adequately defend defendant's infringement claims. The record indicates that Elite has offices in Winkel, Switzerland and Orlando, Florida, with its principal place of business in Orlando, Florida. Plaintiff asserts that the court has no reasonable basis for asserting personal jurisdiction in Kansas against Elite. The court has no reason to doubt this assertion.[2] Plaintiff's argument that, in order to defend itself, it needs to join another party who is not subject to process in Kansas, weighs strongly in favor of transfer. *See Fein v. Pub. Serv. Coordinated Transp.*, 165 F.Supp. 370, 371 (E.D.Pa.1958) (granting motion to transfer when only reason supporting transfer was defendant's need to join a third-party defendant who was not subject to service in Pennsylvania).

The uncontroverted facts before this court are that both plaintiff and Elite reside in the Middle District of Florida, and that "the key witnesses and evidentiary materials surrounding the patent infringement claim will be located in Florida, including evidence concerning the manufacturer of the infringing device and [plaintiff's] purchase and use of the device." (Pl. Mem. at 6.) Defendant argues that plaintiff has not met its burden on this issue, as it merely assumes that the witnesses in question would not voluntarily travel to Kansas to testify.

In addition, defendant points out that plaintiff "has not specifically identified a single witness or piece of evidence in Florida that will not be involved in the breach of contract and breach of warranty action already proceeding between the parties." (Def. Mem. At 11.) Indeed, plaintiff does assume that employees of Elite would not voluntarily travel to Kansas to testify. Plaintiff also fails to identify any specific witnesses or evidence it will present in its defense. The court will not punish plaintiff for these shortcomings, however, because the

**2.** Defendant argues that plaintiff must prove, rather than merely assert, that Elite is not subject to personal jurisdiction in Kansas. However, the court can find no precedent requiring plaintiff to do so. The availability of compulsory process is one of many factors to be considered in this determination; plaintiff does not have to prove each factor under the clear and convincing standard. The court could not expect plaintiff to prove that Elite could never be subject to personal jurisdiction in Kansas, especially while the possibility remained that the court would deny plaintiff's Motion to Transfer and require plaintiff to join Elite in the Kansas action, thereby forcing plaintiff to take the opposite position that personal jurisdiction over Elite did exist.

reason for omission is clear from plaintiff's Answer and Affirmative Defenses to Defendant's Counterclaims: plaintiff "is without knowledge or information sufficient to form a belief as to the validity of [defendant's] patent infringement claims and the legal issues raised by those claims, which allegedly relate to the Elite iGate product, manufactured by Elite." (Pl. Answer and Affirmative Defenses to Defendant's Countercls. at ¶ 26.) Prior to receiving defendant's counterclaims, plaintiff had no knowledge regarding the alleged infringement.

Plaintiff filed its Motion to Sever Counterclaims and to Transfer the same day it filed its Answer and Affirmative Defenses to Defendant's Counterclaims. As it lacked any knowledge of the infringement, the court could not reasonably expect plaintiff to have ascertained the names of Elite employees who would be potential witnesses, much less whether they would agree to travel to Kansas to testify. The court further concludes that it was reasonable for plaintiff to assume that the unknown Elite employees would not voluntarily appear at trial.

Regarding the issue of the cost of proof, the court finds that the cost of proving defendant's infringement case and plaintiff's defenses in a Florida court will potentially be less than proving the same in a Kansas court. By defendant's own admission, discovery in Florida for plaintiff's claims will be extensive. "[A]ny additional expense of investigating [defendant's] counterclaims in Florida due to Elite's location there...is *de minimis*, given that [plaintiff] has already chosen to incur the expense of litigation in Kansas and discovery in two states by filing this action in Kansas." (Def. Mem. at 11.) Although the court assumes defendant advanced this argument to persuade the court in its favor, the argument has had the opposite effect. As stated above, the court is not persuaded by plaintiff's "choice" to sue in Kansas, as such decision was compelled by a forum selection clause in the sales contract at issue in plaintiff's claims.

Plaintiff states that all key witnesses and evidence supporting its defenses to defendant's infringement claims are located in Florida. Moreover, both plaintiff and Elite, the company that manufactured the Allegedly Infringing Device, are located within the jurisdiction of the United States District Court for the Middle District of Florida. Although the infringement claims against plaintiff involve the *use* of an infringing device, a fundamental element to that case is whether the device's *manufacture* infringes upon defendant's patent. Other elements will include plaintiff's purchase and use of the device, any revenues plaintiff enjoyed from its use of the device, and plaintiff's knowledge of defendant's patent. (Report at 10.) Since the manufacture, sale and use of the device are alleged to have occurred in Florida, and because both plaintiff and Elite are located there, proving all elements of and defenses to the infringement claims will likely be easier and less costly in Florida.

The practical requirements of trial, the final factor in determining the propriety of transfer, again weigh strongly in favor of transfer. As stated above, key witnesses and proof are located in Florida. As defendant has argued, extensive discovery will take place in Florida in preparation for plaintiff's claims. Further, the practical requirements of trial include the availability of witnesses, proof and compulsory process to ensure that plaintiff can adequately defend itself.

Based on its doubts regarding the feasibility of asserting personal jurisdiction over Elite, as well as plaintiff's assertion that Elite's presence is essential to plaintiff's defense, the court concludes that transfer is appropriate in this case. Further, even if Elite were subject to personal jurisdiction in Kansas, the court finds that the balance of the evidence on each of the factors set forth in *Chrysler Credit* clearly supports its decision to transfer.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Sever Counterclaims and to Transfer (Doc. 7) is granted. Defendant's counterclaims are transferred to the United States District Court for the Middle District of Florida.